UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 5:23-CR-00123-01 |
| VERSUS | JUDGE DONALD E. WALTER |
| MARVIN GIPSON | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM ORDER

Before the Court is Motion to Dismiss the Indictment, filed by Defendant, Marvin Gipson ("Gipson"). See Record Document 18. Gipson moves to dismiss the single-count indictment under Federal Rules of Criminal Procedure 12(b)(1) and 12(b)(3)(B)(v). The Government filed an Opposition to Gipson's motion. See Record Document 21. For the reasons assigned below, Defendant's motion is **DENIED**.

### BACKGROUND

On November 25, 2022, a Shreveport police officer stopped Gipson's vehicle. As a result, Defendant attempted to flee with a rifle in his hands. After a brief chase, Gipson was apprehended by officers who later brought him into custody. On May 24, 2023, a federal grand jury returned a one-count indictment charging Gipson with one count of possessing a firearm and ammunition as a convicted felon in violation of 18 U.S.C. § 922(g)(1).[1] See Record Documents 1 and 2. Defendant has moved to dismiss the indictment, arguing he is entitled to this relief because the statutory prohibition set forth in Section 922(g)(1) violates the Second Amendment's guarantee to keep and

---

[1] At the time of his arrest, Gipson was already convicted of two counts of armed robbery with a firearm in Caddo Parish in 2006.

bear arms under most recent precedent. The Government opposes this motion, arguing that many courts have already rejected the contention that 18 U.S.C. § 922(g)(1) is unconstitutional.

## MOTION TO DISMISS STANDARD

Federal Rule of Criminal Procedure 12 allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(1).  It further provides that a party may raise a claim that the indictment is legally defective for failure to state an offense. See Fed. R. Crim. P. 12(b)(3)(B)(v). To be legally sufficient, an indictment need only (1) enumerate each element of the charged offense, (2) fairly inform the defendant of the charges filed against him, and (3) provide the defendant with a double jeopardy defense against future prosecution. See United States v. Braun, 453 F. Supp. 3d 883, 886 (M.D. La. 2020); see also United States v. Crinel, 2015 WL 3755896 (E.D. La. June 16, 2015) (citing United States v. Gaytan, 74 F.3d 545, 551 (5th Cir. 1996)). The court is required to take the allegations of the indictment as true. See United States v. Hogue, 132 F.3d 1087, 1089 (5th Cir. 1998).

## ANALYSIS

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. However, it is well-established that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." D.C. v. Heller, 554 U.S. 570, 128 S. Ct. 2783, 2786, 171 L. Ed. 2d 637 (2008). 18 U.S.C. § 922(g)(1) provides that "it shall be unlawful for any person . . . who has been convicted in any court of [ ] a crime punishable by imprisonment for a term exceeding one year [ ] to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any

firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Gipson argues that this rule violates the Second Amendment in light of the Supreme Court's decision in New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. 1, 9, 142 S. Ct. 2111, 2122 (2022), which abrogated the two-step framework[2] for assessing the constitutionality of laws that place restrictions on Second Amendment rights and set forth a new test instead. See Record Document 18 at 1. Applying Bruen analysis, Gipson asserts that Section 922(g)(1) is both facially unconstitutional and unconstitutional as applied to him because it violates the Second Amendment's guarantee of "the right of the people to keep and bear Arms." See id.

To begin with, the United States Supreme Court in Heller held that "the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right" for individuals to "possess and carry weapons in case of confrontation." D.C. v. Heller, 554 U.S. at 592 (2008). The Court also noted that this right can be subject to certain restrictions, including those "longstanding prohibitions on the possession of firearms by felons and the mentally ill." Id. at 626.[3] When analyzing whether a regulation restricting firearm access violates the Second Amendment, courts asked whether the conduct prohibited by the regulation fell within the scope of the Second Amendment and if it did, courts employed a means-end scrutiny – either strict or intermediate. See United States v. McGinnis, 956 F.3d 747, 754 (5th Cir. 2020); see also Hollis v. Lynch, 827 F. 3d 436, 447 (5th Cir. 2016).

The Supreme Court modified this framework in Bruen, a case involving a challenge to New York licensing regime for possessing firearms outside of the home. Establishing that the

---

[2] The Supreme Court's decisions in District of Columbia v. Heller, 554 U.S. 570, 637 (2008), McDonald v. Chicago, 561 U.S. 742, 894 (2010), and Hollis v. Lynch, 827 F.3d 436, 446-47 (5th Cir. 2016) adopted a two-step approach for analyzing Second Amendment challenges that combined history with means-end scrutiny.
[3] See e.g., McDonald, 561 U.S. at 786 (2010).

3

restrictions violated the Second Amendment, the Court expressly abrogated the second step (the means-end scrutiny) of the post-Heller two-step analysis:

> Despite the popularity of this two-step approach, it is one step too many. Step one of the predominant framework is broadly consistent with Heller, which demands a test rooted in the Second Amendment's text, as informed by history. But Heller and McDonald do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

Bruen, 142 S. Ct. at 2127. Accordingly, the Supreme Court developed the following framework:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

Id. at 2129-30.

In the months since Bruen, federal district courts have seen a flurry of motions seeking to render unconstitutional statutes which restrict gun rights for certain groups.[4] This Court is aware of numerous decisions within the Fifth Circuit relating specifically to Section 922(g)(1).[5] As other

---

[4] See, e.g., United States v. Daniels, 22-58, 2022 WL 2654232 (S.D. Miss. July 8, 2022) (analyzing Section 922(g)(3) – drug users/addicts); Clifton v. Dep't of Justice, 21-89, 2022 WL 2791355 (E.D. Cal. July 14, 2022) (analyzing Section 922(g)(4) – the mentally ill); United States v. Burrell, 21-20395, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022) (analyzing Section 922(g)(1) – felon); United States v. Nutter, 21-00142, 2022 WL 3718518 (S.D. W.V. Aug. 29, 2022) (analyzing Section 922(g)(9) – domestic violence); United States v. Rahimi, 61 F.4th 443 (5th Cir. 2023) (analyzing Section 922(g)(8) – persons subject to a court order restraining them from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner).

[5] See, e.g., United States v. Thompson, No. CR 22-173, 2023 WL 3159617 (E.D. La. Apr. 27, 2023); United States v. Bazile, No. CR 23-34, 2023 WL 7112833 (E.D. La. Oct. 27, 2023); United States v. Washington, No. CR 23 00082-02, 2023 WL 7170645 (W.D. La. Oct. 31, 2023); United States v. Michael Conner et al., No. CR 23-54, 2023 WL 8474735, at *2 (E.D. La. Dec. 7, 2023); United States v. Shannon Lamon Anderson, No. CR 23-00180-01, 2023 WL 8655272, at *1 (W.D.

district courts within this Circuit have determined when faced with this same argument, Bruen did not overturn a long-standing precedent established in Heller, McGinnis, Hollis and other cases[6] which concluded, based on the text and history of the Second Amendment, that Section 922(g)(1) is constitutional.[7] In fact, even Justice Kavanaugh, quoting Heller and McDonald, confirmed it in his concurring opinion: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." Bruen, 142 S. Ct. at 2162 (Kavanaugh, J., concurring); see also United States v. Jackson, USDC No. 5:22-CR-168-1 (unpublished).

In adopting the Bruen test upon which Gipson relies when challenging the constitutionality of 18 U.S.C. § 922(g)(1), Defendant maintains *inter alia* that the prohibition against felons is not consistent with our nation's historic tradition of firearms regulation. See Record Document 18 at 4.[8] According to the Government, the right described by the Second Amendment only extends to

---

La. Dec. 13, 2023); United States v. French, No. CR 23-00064-01, 2023 WL 7365232 (W.D. La. Nov. 7, 2023); United States v. Charles, No. 6:21-CR-00154-01, 2023 WL 6358688, at *3 (W.D. La. Sept. 28, 2023); United States v. August, No. 2:23-CR-00023-01, 2023 WL 7230037, at *1 (W.D. La. Nov. 2, 2023).

[6] See, e.g., United States v. Darrington, 351 F.3d 632, 633-34 (5th Cir. 2003) (citation omitted).

[7] See, e.g., United States v. Clay, 2023 WL 3059155, at *2 (S.D. Tex. Apr. 23, 2023) ("[T]he Fifth Circuit has previously held that restrictions prohibiting convicted felons from possessing firearms do not violate the Second Amendment. Nothing in Bruen changed those holdings, which remain binding."); United States v. Mosley, 2023 WL 2777473, at *2 (N.D. Tex. Apr. 4, 2023) ("The Fifth Circuit has held that restrictions prohibiting convicted felons from possessing firearms do not violate the Second Amendment. Bruen did not change that fundamental premise.") (citations omitted); United States v. Grinage, 2022 WL 17420390, at *3 (W.D. Tex. Dec. 5, 2022) ("Nothing in the Bruen decision calls into question the precedential effect of Fifth Circuit decisions finding § 922(g)(1) constitutional based on the Second Amendment's text and history.").

[8] In his motion, Gipson also preserves an issue for review. See Record Document 18 at 7. He argues the Commerce Clause of the United States Constitution does not give Congress the power to exercise jurisdiction over firearms merely because the firearm moved across state lines at some point in the past. See id. However, he admits that this issue is foreclosed by the Fifth Circuit decision in United States v. Seekins, 52 F.4th 988, 989 (5th Cir. 2022). Since the Court is barred by the Fifth Circuit precedent on this particular issue, the undersigned will refrain from addressing this point at this juncture.

"the people"—i.e., "law-abiding, responsible citizens" keeping or bearing arms for lawful purposes. See Record Document 21 at 5-9. (citing Heller, 554 U.S. at 580; Bruen, 142 S. Ct. at 2138 n. 9).

The Court agrees with the Government. In both Heller and Bruen, the Supreme Court included the qualifier "law-abiding" when discussing those people who are facially protected by the Second Amendment. See Heller, 554 U.S. at 635 (holding the Second Amendment confers the "right of law-abiding, responsible citizens to use arms in defense of hearth and home") (emphasis added); Bruen, 142 S. Ct. at 2134 (emphasizing that the petitioners were "two ordinary, law-abiding, adult citizens" protected as "people" under the Second Amendment) (emphasis added). See United States v. Washington, No. CR 23-00082-02, 2023 WL 7170645, at *2 (W.D. La. Oct. 31, 2023).

As it pertains to the Fifth Circuit, the Court of Appeals determined in United States v. Rahimi the constitutionality of 18 U.S.C. § 922(g)(8), which prohibits possession of a firearm by individuals who are subject to domestic violence restraining orders. See United States v. Rahimi, 61 F.4th 443 (5th Cir.), cert. granted, 143 S. Ct. 2688 (2023). In discussing whether the plain text of the Constitution covered Rahimi, the words "the people" in the Second Amendment have been interpreted to refer to all members of a political community, not an unspecified subsection, or people who have developed sufficient connection with this country to be considered part of the community. See Rahimi, 61 F.4th at 451 (citing United States v. Verdugo-Urquidez, 110 U.S. 1056 (1990)). The Government argued that Rahimi was not included in the words "the people" because Heller referred to "law-abiding, responsible citizens" in discussing the scope of the Second Amendment. See Heller, 554 U.S. at 653. Nevertheless, the Fifth Circuit found Rahimi (who was not a convicted felon), to be included within "the people" in the Second Amendment.

6

However, the Court stated that a convicted felon was not included within "the people" in the Second Amendment:

> In other words, Heller's reference to "law abiding, responsible citizens" meant to exclude from the Court's discussion groups that have historically been stripped of their Second Amendment rights, i.e., groups whose disarmament the Founders "presumptively" tolerated or would have tolerated. See 554 U.S. at 627 n. 26, 128 S. Ct. 2783 ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive."). Bruen's reference to "ordinary, law-abiding citizens is no different."

Rahimi, 61 F.4th at 452. The Court further provided:

> Rahimi was not a convicted felon or otherwise subject to another 'longstanding prohibition on the possession of firearms' that would have excluded him. See Heller, 554 U.S. at 626-27, 128 S. Ct. 2783; see Range, 53 F.4th at 273 (concluding that Heller, McDonald v. City of Chicago, Ill., 561 U.S. 742, 130 S. Ct. 3020, 177 L. Ed 2d 894 (2010), and Bruen supports that, criminals, as a group, "fall outside 'the people' and that § 922(g)(1) is well-rounded in the nation's history and tradition of firearm regulation.".).

Id.

Next, in United States v. Daniels, the Fifth Circuit said the same. See United States v. Daniels, 77 F.4th 337 (5th Cir. 2023). Daniels (who was an unlawful user of marijuana) was argued by the Government to be excluded within the language "the people" in the Second Amendment. Likewise, the Fifth Circuit stated:

> Indeed, Rahimi held that citizens accused of domestic violence still had Second Amendment rights. It reasoned that when Heller and Bruen used the phrase "law-abiding," it was just "shorthand" to "exclude from the [...] discussion" the mentally ill and felons, people who were historically "stripped of their Second Amendment rights." All others are presumptively included in the Second Amendment's ambit. Because Daniels is not a felon or mentally ill, Rahimi's treatment of the "law-abiding" monitor suggests that he has presumptive Second Amendment rights as well.

Id. at 343. The Court further reiterated:

7

> Once we conclude that Daniels has presumptive Second Amendment rights, the focus shifts to step two of the Bruen analysis: whether history and tradition support Section 922(g)(3).

Id.

Since Heller, Bruen, Rahimi, Daniels and other legal precedent firmly state that convicted felons are not a part of "the people" covered by the Second Amendment, Defendant's argument fails because the plain text of the Second Amendment does not cover his conduct. As it pertains to Gipson's historical approach towards a firearm regulation, this Court finds that since the Defendant failed the first step of the Bruen analysis, it is futile to explore whether the restriction of firearm regulation is consistent with the United States' historical tradition of firearm regulation. Therefore, this Court finds 18 U.S.C. § 922(g)(1) does not violate the Second Amendment and is constitutional as applied to the Defendant.

Finally, Gipson argues that that the *dicta* in Bruen regarding the continuing validity of the statutory prohibition against firearms does not control the outcome of this case and instead Bruen's holding governs. See Record Document 18 at 5. The Supreme Court stated in Heller and repeated further in Bruen that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." Heller, 554 U.S. at 626-27; see also Bruen, 597 U.S. at 81.  Both Justice Alito and Justice Kavanaugh, who were joined by Chief Justice Roberts, expressed in their concurring opinions their explicit intent to leave undisturbed government regulations prohibiting the possession of firearms by felons. For instance, Justice Alito stated: "Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun.  Nor have we disturbed anything that we said in Heller or McDonald v. Chicago, 561 U.S. 742, 130 S. Ct. 3020, 177 L.Ed.2d 894 (2010), about restrictions that may be imposed on the possession or carrying of guns." Bruen, 142 S. Ct. at 2157 (Alito, J., concurring). In his concurring opinion, Justice Kavanaugh as well as Chief Justice

8

Roberts provided additional support for felons in possession of firearms restrictions in the wake of <u>Bruen</u> by stating, "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations." <u>Id.</u> at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring). Likewise, Justice Breyer, joined by Justice Sotomayor and Justice Kagan, stated, "I understand the Court's opinion today to cast no doubt on that aspect of Heller's holding." <u>Id.</u> at 2189 (Breyer, J., joined by Sotomayor, J., and Kagan, J., dissenting).

Lower courts "are generally bound by Supreme Court *dicta*," particularly when the dicta are "recent and detailed." <u>Hollis</u>, 827 F. 3d at 448; <u>see also</u> <u>United States v. Becton</u>, 632 F.2d 1294, 1296 n. 3 (5th Cir. 1980) ("We are not bound by *dicta*, even of our own court. And though we accord it the greatest deference and persuasive force, mature consideration has convinced us that we should not follow it here. *Dicta* of the Supreme Court are, of course, another matter."). Thus, because <u>Bruen</u> is in fact, binding precedent, and even if this language is characterized as *dicta*, at a bare minimum, it is entitled to great weight. <u>See</u> <u>United States v. Schnur</u>, No. 1:23-CR-65-LG-BWR-1, 2023 WL 4881383, at n. 6 (S.D. Miss. July 31, 2023).

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Gipson's Motion to Dismiss Indictment is hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 12th day of January, 2024.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE